**AETNA BALL & ROLLER BEARING CO.**
**v. STANDARD UNIT PARTS CORP.**

No. 50C–857.

United States District Court
N. D. Illinois, E. D.

Feb. 14, 1952.

Albert G. McCaleb, Moore, Olson & Trexler, Roy H. Olson and Curtis F. Prangley, all of Chicago, Ill., for plaintiff.

Sidney Neuman, Thiess, Olson & Mecklenburger, Chicago, Ill., for defendant.

Victor E. LaRue, Chicago, Ill., special master.

IGOE, District Judge.

The above entitled cause came on regularly for trial, and the court having duly considered the evidence, and being fully advised in the premises, now finds the following:

### Findings of Fact

1. This is a suit, arising under the patent laws, for infringement of claims 1, 2, 4 and 5 of Stein patent 1,958,725; claims 1, 4, 7 and 8 of Stein patent 2,140,818, and of claims 1, 2, 3 and 4 of Stein patent 2,230,-471.

2. Plaintiff, an Illinois corporation, is the owner of each of the said three patents in suit.

3. Stein patent 1,958,725, in suit, expired pendente lite, on May 15, 1951, suit having been filed on June 15, 1950 seeking an injunction against further infringement and an accounting for profits and damages. Upon trial plaintiff abandoned its claim for injunction under said Stein patent 1,958,-725, but seeks an injunction under the other two Stein patents in suit, and an accounting for profits and damages under all three patents in suit.

4. Defendant, Standard Unit Parts Corporation, is an Indiana corporation, having a regular and established place of business in Chicago.

5. The accused clutch release bearings, marked "Federal 1054", "Federal 1087",

and "Federal 1181" (Plaintiff's Exhibits 4, 5 and 6 respectively) were sold publicly by the defendant in this judicial district within six years prior to the filing of the bill of complaint, and the defendant, prior to the filing of said bill of complaint, received a written notice from plaintiff of its claim of infringement of the three patents in suit by defendant.

6. The patents in suit relate to clutch release thrust bearings, particularly for automotive vehicles. Among the problems encountered with conventional automotive release thrust bearings, as shown in Plaintiff's Exhibit 10, was the difficulty of maintaining proper lubrication thereof during use, the failure of the bearings, due to misalignment of the races and the annular row of balls, the damage to the automotive clutch by reason of the escape or throwing of excessive grease from the bearing upon the clutch parts, and the noise attendant upon the radial relative movement of the races and the row of balls as the clutch pedal is operated and released. Such conventional bearings have been used for many years, but these problems had not been solved prior to the time Stein in 1932 was delegated to develop a bearing solving those problems.

7. Stein tried several things to solve those problems, but each was unsatisfactory until Stein in the year 1933 conceived and constructed the bearing shown in the first Stein patent (1,958,725), which embodied a retainer holding balls of a clutch release bearing in angularly spaced relation and in confronting ball grooves of complemental fixed and free race rings retained in concentric relation upon the flanges or hub portions of the retainer, which hub portions provide journals for the retainer and said free race ring.

8. Between two and three million bearings of the structure shown in the first Stein patent were manufactured for the automotive trade by the plaintiff in the years 1934–1936 inclusive, after which improvements shown in the second Stein patent (2,140,818) were incorporated in the clutch release thrust bearings manufactured by the plaintiff.

9. The bearing of the first Stein patent, as manufactured by the plaintiff, was a very good bearing and satisfactory for most normal applications, but in tougher applications an excessive grease loss was experienced and Mr. Stein was delegated to the further improvement of the clutch release thrust bearing.

10. A number of expedients were tried by Stein to solve the problem of excessive grease loss in the tougher applications of the clutch release bearings of the first Stein patent and to provide a bearing which could be initially packed with grease at the factory and to maintain an ample quantity of grease throughout the life of the vehicle with which the bearing was used, but all of these were unsatisfactory until Stein conceived and constructed the bearing shown in the second Stein patent (2,140,818), wherein was provided a considerable grease reservoir space within the enclosing shell by reducing the diameter of the fixed race relatively to the diameter of the shell, the void provided thereby overcoming the pumping action which was found to have caused the loss of grease in the tougher applications of the bearing of the first Stein patent. Stein also provided a shell with a beveled corner at the fixed race end of the shell and provided the fixed race with an inwardly beveled peripheral surface to cause circulation of the lubricant. Many millions of automotive clutch release thrust bearings of the structure disclosed in the second Stein patent were made by plaintiff through the years 1937 to 1940 inclusive, after which further improvements shown in the third Stein patent (2,230,471) were incorporated into the clutch release thrust bearing made by the plaintiff.

11. It was found in some instances that grease leaked between the free race and the shell of the second Stein bearing through failure of the shell spinning mechanism to effect a sufficient seal between the shell and the periphery of the free race. Stein was then delegated to the task of overcoming that grease leakage. Several things were tried by Stein but without success until he conceived and constructed the bearing of the third Stein patent, wherein the free

race was provided with a sharp corner at the inner radial face, and a sharp outer corner formed by a sharp shoulder extending from the beveled outer peripheral surface of the free race, those sharpened corners of the hardened free race cutting into the soft shell as the shell was spun over the free race so as to provide a cut seal preventing any leakage between the shell and the periphery of the free race.

12. In the years from 1934 to 1950, over 39 million of the clutch release thrust bearings of the patents in suit were made and sold by plaintiff for use in automobiles, trucks, tractors, and the like, during which same period 64 million passenger cars, trucks and tractors were manufactured in the United States. Between 55 and 60 per cent of all American made automotive vehicles were equipped with clutch release thrust bearings manufactured by the plaintiff under the three Stein patents in suit.

13. Automotive vehicle manufacturers, such as Ford, Chrysler, and Kaiser-Frazer, were given licenses by plaintiff to have clutch release thrust bearings of the three Stein patents in suit made by other bearing manufacturers and supplied to the automotive manufacturers for original equipment purposes, and in some instances for supply to the service dealers of the automotive manufacturers.

14. During almost the entire life of the first Stein patent; for a period of eleven years after the second Stein patent issued, and for a period of almost nine years after the third Stein patent issued, the patents in suit were recognized by the trade; several bearing manufacturers having sought licenses to manufacture the bearings of the Stein patents in suit for supply to the automotive service trade, but these requests were refused and yet no attack upon the patents was made by any competitor. Prior to 1949, two bearing manufacturers started to manufacture, for the service or replacement trade, bearings claimed to infringe one or more of the three Stein patents in suit, but on notice by the plaintiff ceased that infringement.

15. In the year 1949, Federal Bearings Co., Inc. began to supply to the defendant and others in the service or replacement trade, bearings which were deemed by the plaintiff to infringe the Stein patents in suit, and notices of infringement were sent by plaintiff. At that time the first Stein patent had been in existence for almost fifteen years, the second Stein patent had been in existence for almost eleven years, and the third Stein patent had been in existence for eight years, without attack by other bearing manufacturers.

16. In the year 1947, at the request of the Ford Motor Company, employees of the Federal Bearings Co., Inc. were shown through the plaintiff's factory to familiarize those Federal employees with the plaintiff's processes of and machinery for the making of clutch release thrust bearings under the three Stein patents in suit.

17. In the year 1948, Federal made and supplied to the Ford Motor Company bearings identical with those supplied by plaintiff under the three Stein patents in suit, this being permitted by the license given by plaintiff to the Ford Motor Company to obtain plaintiff's patented bearings from other manufacturers for original equipment purposes. About a year after the Federal Bearings Co., Inc. first supplied such identical clutch release thrust bearings to the Ford Motor Company, Federal began to supply to the service or replacement trade bearings of the same structure as the accused devices, plaintiff's Exhibits 4, 5 and 6.

18. The bearings of each of the three Stein patents in suit was created to meet definite needs of the automotive industry in the search for satisfactory clutch release thrust bearings.

19. Bearings made by plaintiff in accordance with the patents in suit received upon their introduction immediate and widespread commercial acceptance and adoption by the American motor vehicle industry.

20. The accused Federal bearings (Plaintiff's Exhibits 4, 5 and 6) sold by the defendant provide a two-piece retainer, one part of which forms a separator for the annular row of balls, and the other part of which forms a hub received in a counterbore in a fixed race, the hub having a flange

received in the free race and also having a radially extending portion securing the retainer against axial separating movement relative to the fixed and free races. Said two-piece retainer of each of said accused bearings performs substantially the same function, in substantially the same way, to produce substantially the same result, as the one-piece retainer of the bearing of Stein patent 1,958,725, as described in claims 1, 2, 4 and 5 of said patent.

21. The "shaft" specified in claims 1, 2, 4 and 5 of Stein patent 1,958,725 is not an element of the claimed invention, but the term "shaft" in said claims merely serves to describe the environment in which the patented bearing is used and on which the bearing, defined in the patent claims, is mounted by the purchaser thereof.

22. The accused clutch release bearings marked "Federal 1054", "Federal 1087", and "Federal 1181" (Plaintiff's Exhibits 4, 5 and 6 respectively) sold by the defendant, are respectively the full equivalent of the bearing disclosed and claimed in Stein patent 1,958,725.

23. The accused Federal bearings (Plaintiff's Exhibits 4, 5 and 6) sold by defendant prior to May 15, 1951, infringed Stein patent 1,958,725.

24. The accused Federal bearings 1054, 1087, and 1181 (Plaintiff's Exhibits 4, 5, and 6) fall clearly within each of claims 1, 4, 7 and 8 of Stein patent 2,140,818, and are structurally identical to the bearings defined in said claims of said patent.

25. The accused Federal bearings (Plaintiff's Exhibits 4, 5 and 6) infringe Stein patent 2,140,818.

26. The accused Federal bearings 1054, 1087, and 1181 (Plaintiff's Exhibits 4, 5 and 6) fall clearly within each of claims 1, 2, 3 and 4 of Stein patent 2,230,471, and are structurally identical with the bearings defined in said claims of said patent.

27. The accused Federal bearings 1054, 1087, and 1181 (Plaintiff's Exhibits 4, 5 and 6) infringe Stein patent 2,230,471.

28. The defendant on trial relied upon the patents to Hess 1,116,887, to Graham 1,296,650, and to Marles 1,734,222, as each anticipating the Stein patent 1,958,725, and offered expert testimony in support of the defendant's claim that Stein patent 1,958,-725 is invalid for want of invention over each of said patents to Hess, Graham, and Marles. Said patents to Hess, Graham, and Marles do not anticipate claims 1, 2, 4 and 5 of Stein patent 1,958,725, and the expert testimony taken with said three patents failed to sustain the burden upon the defendant of proving want of invention in claims 1, 2, 4 and 5 of Stein patent 1,958,725.

29. No thrust bearing known prior to the year 1933, when Stein created the bearing disclosed in patent 1,958,725, embodied a retainer, or an equivalent two-piece structure, which held the balls of the bearing in spaced relation in confronting grooves of complemental fixed and free race rings, retained the race rings in concentric rotary relation by utilizing the flanges or hub portions of the retainer or its equivalent as journals maintaining the races and balls, in concentric rotary relation with each other and with the mounting shaft. The bearing as disclosed in Stein patent 1,958,725 and as described in claims 1, 2, 4 and 5 of said patent, required for its conception and production the exercise of inventive genius; the exercise of skill beyond the skill of the calling, and constitutes an invention.

30. The defendant upon trial relied on the patents to White 1,431,551, to Bott 1,-722,488, and to Hughes 1,762,819, as each anticipating claims 1, 4, 7 and 8 of Stein patent 2,140,818, and offered expert testimony in support of the defendant's claim that Stein patent 2,140,818 is invalid for want of invention over each of the patents to White, Bott, and Hughes, but said patents to White, Bott, and Hughes do not anticipate Stein patent 2,140,818, and the expert testimony taken with said patents, failed to sustain the burden upon the defendant of proving want of invention in claims 1, 4, 7 and 8 of the Stein patent 2,140,818.

31. No clutch release thrust bearing known prior to the year 1937, when Stein developed the bearing shown in patent 2,140,818, incorporated the structure de-

fined in claims 1, 4, 7 and 8 of said patent, for the purposes set forth in said Stein patent, and for providing a thrust release clutch bearing capable of retaining an ample supply of grease over substantially long periods of running time, without refilling and without the use of friction producing formal sealing members between relatively movable or relatively rotatable parts of the bearings, or between a relatively rotatable part of the bearing and the shaft or carrier upon which the bearing is mounted in use.

32. Defendant, upon the trial, relied upon the patents to Schatz 1,176,169 and 1,-073,530, to Schubert 2,029,445, to Schoenrock 2,140,335, to Stein 1,958,725, and to Stein 2,140,818, as each anticipating claims 1, 2, 3 and 4 of Stein patent 2,230,471, and further offered expert testimony, together with each of said above mentioned patents, as proof of want of invention in the Stein patent 2,230,471, but none of the patents relied upon by the defendant, as above mentioned, · anticipate Stein patent 2,230,471, and the expert testimony, taken with said patents, failed to sustain the burden upon defendant of proving want of invention in claims 1, 2, 3 and 4 of Stein patent 2,230,471.

33. No clutch release thrust bearing known prior to the year 1938, when Stein developed the bearing shown in Stein patent 2,230,471, embodied the structure set forth in claims 1, 2, 3 and 4 of said patent, for the purposes therein set forth, and for preventing leakage of grease from the bearing between the shell of the bearing and the free race ring, to which the shell is secured, during manufacture of the bearing.

34. Claims 1, 2, 4 and 5 of Stein patent 1,958,725; claims 1, 4, 7 and 8 of Stein patent 2,140,818, and claims 1, 2, 3 and 4 of Stein patent 2,230,471, are clear, definite, and not functional, but properly descriptive of the structures disclosed in, and the new and novel combinations defined in the said claims of, said patents.

35. No admissions or representations contained in the file wrappers of the patents in suit bar or estop the plaintiff from claiming infringement of said patents by reason of the equivalent structures sold by defendant and identified in this suit as Plaintiff's Exhibits 4, 5 and 6. Plaintiff did not, by reason of any remarks or amendments made during the Patent Office prosecution of the applications which led to the grants of the patents in suit, abandon the invention set forth in the claims of said patents.

36. The trade for a period of over fifteen years, and until bearings such as the accused Federal bearings (Plaintiff's Exhibits 4, 5 and 6) were offered to the trade, acknowledged the validity of Stein patent 1,-958,725; for a period of over ten years the trade similarly acknowledged the validity of Stein patent 2,140,818, and for a period of over eight years the trade similarly acknowledged the validity of Stein patent 2,230,471, by refraining from infringement thereof, although more than half of all the automotive vehicles made in this country have been equipped with the bearings of the patents in suit.

37. No evidence was introduced by defendant in support of its claim that plaintiff has misused the patents in suit, and there has been no misuse of the patents by the plaintiff.

38. Plaintiff has placed the required statutory notice on bearings manufactured and sold by it under Letters Patent 1,958,-725 and 2,140,818.

## Conclusions of Law

1. This Court has jurisdiction of the parties and of the subject matter.

2. The patents in suit were duly and regularly issued by the United States Patent Office. Defendant in assailing said patents has a heavy burden of proof, and the burden of proof is upon the defendant to establish the want of invention in each of said patents, which burden defendant has not sustained.

3. Infringement of a patent is not avoided by substituting for the unitary part of a structure two parts performing substantially the same function in substantially the same way to produce substantially the same result, nor is infringement avoided by the omission of that element of a claim

which constitutes merely the environment of the inventive structure, and which omitted element is supplied by every ultimate purchaser or user of the accused structure. Nor is infringement avoided by the making of alleged improvements upon the structure covered by a patent.

4. Defendant's devices herein accused are equivalent to, and infringements of, the devices described and claimed in Claims 1, 2, 4 and 5 of Letters Patent 1,-958,725.

5. If an accused structure falls clearly within the claim of a patent, infringement is made out and that is the end of it. Defendant's devices herein accused as infringements of Letters Patent 2,140,-818 and Letters Patent 2,230,471 are the same as that shown and described in said Letters Patent, and literally and in substance correspond to the language of claims 1, 4, 7 and 8 of Stein patents 2,140,818 and claims 1, 2, 3 and 4 of Stein patent 2,230,-471, and each of said devices infringes each of said claims.

6. The presumption of validity of the patents in suit is further strengthened by the widespread commercial adoption of the bearing described and claimed in said patents to the extent that more than half of all the automotive vehicles in this country have been equipped with these patented articles.

7. The presumption of validity in this case of Stein patent 1,958,725 is further strengthened by the fact that the patentee's device fulfilled a definite need, and solved long existing problems, and evidences that what the patentee did constituted the exercise of inventive skill or genius and not merely the ordinary skill of those in the bearing manufacturing art.

8. The presumption of validity in this case of the three patents in suit is further strengthened by the fact of long acquiescence by the public in the patentee's claims for a long period while the patented device went into widespread use.

9. Conception and production of the device of each of the patents in suit required the exercise of inventive skill, and the subjects matter of each of claims 1, 2, 4 and 5 of Stein patent 1,958,725; of each of claims 1, 4, 7 and 8 of Stein patent 2,-140,818, and of each of claims 1, 2, 3 and 4 of Stein patent 2,230,471 is of an inventive character, is not anticipated by the prior art, and each of said claims is good and valid in law.

10. The fact that neither the plaintiff nor the defendant supply a "shaft" as set forth in the claims of Stein patent 1,958,725, does not establish that the plaintiff is guilty of misuse of said patent, nor absolve the defendant of the consequences of its infringement of said patent.

11. The patents in suit particularly point out and definitely claim the inventions set forth therein in full compliance with the requirements of the patent statutes.

12. Plaintiff is entitled to a permanent injunction against further infringement of Stein patent 2,140,818 and Stein patent 2,230,471 by defendant, defendant's agents, all others controlled by defendant, and those in privity with the defendant.

13. Plaintiff is entitled to an accounting for damages, suffered by it by virtue of the infringement by defendant of plaintiff's patents 1,958,725, 2,140,818 and 2,230,471.

14. Plaintiff is entitled to its costs and disbursements in this action, as in such cases made and provided by law.

### Judgment

This cause having come on to be heard upon the pleadings and proofs, and having been argued by the parties, upon consideration thereof, and upon the findings of fact and conclusions of law entered herein on February 14, 1952, it is ordered, adjudged, and decreed:

1. That claims 1, 2, 4 and 5 of United States Letters Patent No. 1,958,725, granted May 15, 1934, to Louis H. Stein, assignor to Aetna Ball Bearing Manufacturing Company, were good and valid in law up to the expiration of said patent on May 15, 1951.

2. That claims 1, 4, 7 and 8 of United States Letters Patent No. 2,140,818, granted December 20, 1938, to Louis H. Stein, assignor to Aetna Ball Bearing Manufacturing Company, are good and valid in law.

3. That claims 1, 2, 3 and 4 of United States Letters Patent No. 2,230,471, granted February 4, 1941, to Louis H. Stein, assignor to Aetna Ball Bearing Manufacturing Company, are good and valid in law.

4. That plaintiff, Aetna Ball and Roller Bearing Company, is the owner of all right, title and interest in, to and under said Letters Patent, and each of them.

5. That the defendant, Standard Unit Parts Corporation, a corporation of the State of Indiana, has since the issuance of said United States Letters Patent No. 1,958,725, and prior to the expiration thereof, pendente lite, on May 15, 1951, infringed the said Letters Patent, by using and selling within the Northern District of Illinois and elsewhere, clutch release thrust bearings embodying the invention set forth in claims 1, 2, 4 and 5 of Letters Patent No. 1,958,725, in violation of the exclusive rights of plaintiff under said claims.

6. That the defendant, Standard Unit Parts Corporation, a corporation of the State of Indiana, has since the issuance of said United States Letters Patent No. 2,-140,818 and United States Letters Patent No. 2,230,471, infringed the said Letters Patent, by using and selling within the Northern District of Illinois and elsewhere, clutch release thrust bearings embodying the invention covered by claims 1, 4, 7 and 8 of said Letters Patent No. 2,140,818, and the invention covered by claims 1, 2, 3 and 4 of said Letters Patent No. 2,230,471, all in violation of the exclusive rights of plaintiff under said claims.

7. That an injunction be issued out of and under the seal of this court, pursuant to the prayer of the complaint herein, directed to Standard Unit Parts Corporation, a corporation of Indiana, permanently enjoining and restraining it, its servants, agents, employees, those in active concert or participation with it, and those otherwise

in privity with said corporation, and each and every one of them, from directly or indirectly using or selling, or offering to sell, bearings like plaintiff's Exhibits 4, 5 or 6, or any colorable modification thereof, or other device embodying the invention covered by claims 1, 4, 7 or 8 of United States Letters Patent No. 2,140,818, or covered by claims 1, 2, 3 or 4 of United States Letters Patent No. 2,230,471, or in any way violating the rights of the plaintiff under said claims or any of them.

8. That plaintiff recover from defendant, for infringement by said defendant of claims 1, 2, 4 and 5 of United States Letters Patent No. 1,958,725; for infringement of claims 1, 4, 7 and 8 of United States Letters Patent No. 2,140,818, and for infringement of claims 1, 2, 3 and 4 of United States Letters Patent No. 2,230,471, such general damages as shall be due compensation to plaintiff for the using and selling of the inventions of said Letters Patent, not less than a reasonable royalty therefor, and that plaintiff recover its costs and taxable disbursements to date.

9. That this cause be referred to Victor LaRue, Esq., as special master of this court, to ascertain and report the amount of general damages which have accrued to plaintiff by reason of defendant's infringement of claims 1, 2, 4 and 5 of United States Letters Patent No. 1,958,725, by reason of defendant's infringement of claims 1, 4, 7 and 8 of United States Letters Patent No. 2,140,818, and by reason of defendant's infringement of claims 1, 2, 3 and 4 of United States Letters Patent No. 2,230,471. The said special master shall have full power and authority, as provided under the Federal Rules of Civil Procedure, 28 U.S.C.A., and the local rules of this court, and without any limitation, to regulate all proceedings in every hearing before him and to require the production before him of evidence upon all matters embraced in this reference, and he shall forthwith proceed with said reference and take and receive the evidence presented and report his findings and conclusions thereon.